## UNITED STATES COURT OF INTERNATIONAL TRADE

_____

| | |
|---|---|
| MTD CONSUMER GROUP INC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )    Court No.  22-00233 |
| UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
|_____| ) |

## **COMPLAINT**

Plaintiff, MTD CONSUMER GROUP INC (MTD), by and through its attorneys, Sandler, Travis & Rosenberg, P.A., alleges as follows:

## **PARTIES**

1.     MTD is a corporation organized and existing under the laws of Ohio with its corporate headquarters in Valley City, Ohio.  MTD owns a portfolio of brands through which it sells a wide range of outdoor products including but not limited to lawn and garden equipment and Recreational Off-Highway Vehicles (ROVs).

2.     MTD was the Importer of Record for all of the entries subject to this action.

3.     The defendant in this case is the United States, through U.S. Customs and Border Protection (CBP or Customs).  CBP is responsible for classifying merchandise imported into the United States under the Harmonized Tariff Schedule of the United States (HTSUS) and collecting duties on merchandise.

## **Nature of the Action**

4.     This action arises under 19 U.S.C. § 1514(a)(2), as amended, to contest CBP's classification and the rate and amount of duties chargeable upon liquidation of certain ROVs as

further described herein.  MTD seeks a refund of all duties unlawfully assessed and paid by MTD,

plus interest as provided by law.

5.      The claimed and assessed tariff provisions of the Harmonized Tariff Schedule

provide as follows:

> Heading 8703:  Motor cars and other motor vehicles principally designed for the
> transport of persons (other than those of 8702), including station
> wagons and racing cars."

> Heading 8704:  Motor vehicles for the transport of goods.

## JURISDICTION AND STANDING

6.       Protest No. 4103-22-102883, challenging the liquidations or reliquidations of the

six subject entries, was timely filed on June 30, 2022.  Thereafter, on July 1, 2022, a request for

accelerated disposition was duly mailed pursuant to 19 C.F.R. § 174.22.  CBP failed to grant or

deny the protest within 30 days and therefor the protest was deemed denied by operation of law

on July 31, 2022.

7.      This Court possesses exclusive jurisdiction over this action under 28 U.S.C. §

1581(a) as amended, because the action was commenced to contest the denial of a protest under

19 U.S.C. § 1514.

8.      In accordance with 28 U.S.C. § 2636(a), this action was timely commenced within

180 days after plaintiff's protest was deemed denied by operation of law.

9.      MTD has standing to bring this action pursuant to 28 U.S.C. § 2631(a) because its

summons was filed under 19 U.S.C. § 1514 to contest the deemed denial of its protest contesting

the liquidations of the entries identified in the summons, which are the subject of this action.

10.     All liquidated duties, taxes, and fees were paid prior to commencement of this

action.

**Background**

11.     MTD was founded in Cleveland Ohio in 1932.  MTD designs, manufactures, and sells a wide variety of outdoor products including lawn mowers, garden tools, and snow blowers through a large portfolio of well-known brands.  MTD-owned brands include Troy-Bilt®, Rover®, Yard Machines®, Remington®, and, relevant to this action, Cub Cadet®.

12.     For over 50 years the Cub Cadet brand has been synonymous with high quality lawn care equipment including high-end mowers.  In 2006 MTD launched the first Cub Cadet branded offroad vehicles, the Volunteer Series™.  The vehicles featured in the Volunteer Series were designed as low speed work trucks with large, pallet sized cargo areas and robust structural features including suspensions to accommodate hauling 1000+ lbs. of cargo.

13.     Seeking to capitalize on the rise in popularity of offroad vehicles amongst recreational riders and outdoor enthusiasts, in or around 2016, MTD designed and launched the Cub Cadet Challenger Series™ of ROVs (Challenger Series).  MTD markets the Challenger Series as Utility Terrain Vehicles.  The Challenger Series was designed primarily to appeal to consumers looking for a sporty, safe, comfortable, fast, and stable ROV for offroad recreational riding, transporting passengers for outdoor activities such as camping, hunting, hiking, and fishing, and for occasional outdoor work.  The Challenger Series are the subject of this action (hereinafter UTVs).

14.     The UTV models at issue are the M 550, MX 550, M 750, and MX 750.

15.     The designations 550 and 750 refer to engine displacement.  The 550 models come equipped with 546cc engines while the 750 models come equipped with 735cc engines.  CC stands for cubic centimeters and refers to the size of the chamber where air and fuel are mixed inside the engine.  The larger the cubic capacity of an engine, the more power it can produce.

16.     The designation M and MX refer to the Models' standard features package.  The M

models have fewer standard features than the more premium MX models.

17.    Below are representative depictions of the M and MX model UTVs.



M Series                    MX Series

18.    MTD consistently entered the UTVs under Heading 8703, HTSUS, which covers "[m]otor cars and other motor vehicles principally designed for the transport of persons (other than those of 8702), including station wagons and racing cars."

19.    MTD's classification is based upon court precedent, the structural and auxiliary design features of the UTVs, the uses for which the UTVs were designed and marketed, the Government's definition of ROV, and a long history of CBP rulings classifying virtually identical ROVs under Heading 8703, HTSUS.

20.    The Court of Appeals for the Federal Circuit has long held that motor vehicles designed "more" for passenger transport than for moving cargo are properly classified under Heading 8703, HTSUS. *Ford Motor Company v. United States*, 926 F.3d 741, 754 (Fed. Cir. 2019) ("The relevant inquiry for classification under HTSUS Heading 8703 is 'that a vehicle's intended persons must outweigh an intended purpose of transporting goods'"); *See Also Marubeni America Corp. v. United States*, 35 F.3d 530 (Fed. Cir. 1994).  It is also well settled that intended

4

purpose can be determined by reviewing a vehicle's structural and auxiliary design features as well as its marketing.

21.     Each of the UTVs at issue comes standard with a wide variety of structural and auxiliary features designed to optimized for transporting passengers in offroad environments.

22.      Each of the UTVs:

- has a maximum speed of 45 miles per hour (mph)

- on-demand four-wheel drive

- low pressure 26" tires with offroad/trail tread patterns to help grip uneven terrain

- front suspension designed with 9" of travel and rear suspension designed with 8" of travel to maintain ground contact while traveling at speed over uneven ground (travel is the distance a tire is designed to move without bottoming out at either the top or bottom of its movement)

- multi-ply tires to help prevent punctures on rough terrain

- a wide 76.8" wheelbase for stability on uneven terrain and slopes

- a ground clearance of between 11.6" and 13" to traverse debris-strewn trails

- locking differentials (the 550 M has a full-time locked rear differential and a lockable front differential while the 550 MX, 750 M and 750 MX have front and rear lockable differentials) for increased traction in off-road conditions

- both front and rear anti-sway bars (sway bars) to keep the vehicles from pitching and rolling while driving at speed over rough terrain

- suspension systems with adjustable spring rates, damping, and rebound specifically designed for increased traction and comfort while riding offroad

- metal skid plates along the vehicles' bottom to prevent punctures and to allow the vehicle to slide more easily across logs and boulders

- high quality paint, wiring, fuse boxes, seat fabric and seat stitching all designed and intended to withstand pressure washing after a muddy trail ride

- specially positioned engine air intakes to prevent drawing dust and dirt into the vehicles' engines while operating on muddy and/or dusty terrain as well as enhancing the UTVs water crossing capabilities

- specially routed exhaust systems to avoid direct contact with grass or brush in order to prevent trail fires.

23.     Each of the UTVs at issue comes standard with industry leading passenger

safety features including but not limited to:

- seat belts, occupant safety structures (roll cages)

- side doors for driver and passenger arm and leg retention

- a sensor to limit vehicle speed to 15 mph if the driver's safety belt is not buckled

- disc brakes for quick stopping on muddy and wet trails

- steel plated firewalls to prevent sticks or other debris from puncturing the floor of the passenger compartment while riding on rough terrain

- horns

- high/low beams for low light trail riding

- break depression required for starting the UTVs

- an ergonomic hand hold point for the passenger

- a specially located parking break to ensure it is within the drivers field of vision.

24.     Because the UTVs are designed primarily for passenger use, MTD designed each

of the UTVs at issue to fully comply with all of the Recreational Off-Highway Vehicle Association

(ROHVA) voluntary safety standards.     About Us | Recreational Off-Highway Vehicles

Association (rohva.org)

25.     ROHVA "promotes the safe and responsible use of recreational off-highway

vehicles (ROVs) manufactured or distributed in the United States.  ROHVA is accredited by the American National Standards Institute (ANSI) to develop a standard for the equipment, configuration and performance requirements of ROVs."

26.    ROHVA's voluntary safety standards do not apply to slower, offroad vehicles optimized for carrying cargo like the MTD Volunteer Series of work trucks which were not designed to be ROHVA compliant.

27.    Each of the UTVs at issue comes standard with a wide variety of comfort and convenience features including:

- foam seating specifically designed for comfort and lumbar support for long trail rides

- specially located shoulder belt attachment to prevent contact with the driver or passenger's neck

- center cupholders for the driver and the passenger

- a 12-volt power outlet for cell phones or other personal electronics

- a digital dashboard display

- a familiar automotive style interface

-  a glove box

- noise dampening ducts for a quieter passenger cabin

- enhanced engine isolation to reduce engine vibrations from being transmitted into the passenger cabin

- adjustable independent dual shocks for a soft ride on rough off-road terrain

- rack and pinion steering

- tilting steering wheel

- double-DIN bay for the addition of an entertainment or navigation system

- extra switches for optional accessories

- under-hood storage

- red colored inside door handles for increased visibility

- a padded grip steering wheel for secure grip while driving on uneven terrain

- specially designed and located seat belts for comfort and easy unbuckling while wearing a helmet

- expanded headroom to accommodate the upward movement of occupants wearing helmets

28.     In addition to the M model standard features discussed above, the premium MX models include other standard features such as power steering, head restraints, a front mounted winch, finished lower doors, and a roof.

29.     Each of the UTVs at issue includes a 34" W x 46" D x 11" D open area in the back to carry a limited amount of cargo including outdoor recreational gear, a spare tire, or work-related tools or materials.  Cargo cannot exceed 500 pounds nor the dimensions of the limited cargo area.  Exceeding the cargo weight or dimensional limitations of the cargo area could result in personal injury or death.

30.     When carrying cargo, the offroad capability of the UTVs may be compromised because cargo can change the ROVs performance, handling, and roll over potential.

31.     MTD offers a variety of optional passenger comfort and convenience features for the UTVs at issue including a cabin heater, sound bar, passenger grab bar, roof, lower and upper doors, dust panels, various windshields, safety head restraint kits, and power steering kits.

32.     MTD also offers optional features to enhance the off-road performance of the UTVs including rock sliders, extra lighting for low light trail riding, brush guards and winches.

33.     Year after year the most popular optional features consist of passenger comfort and convenience features such as full upper and lower doors, windshields, rear windows, and cabin heaters.

8

34. MTD does not offer optional features to increase the cargo carrying capacity of the UTVs.

35. Based upon the UTVs' design, MTD markets the Challenger Series primarily for offroad recreational riding, outdoor activities such as camping, fishing, hiking, and hunting, and for light outdoor work on farms or ranches.

36. The majority of MTD's website photographic advertisements depict the Challenger Series out on the trail, not transporting cargo. Utility Vehicles | Cub Cadet US.  For example:









37.     The U.S. Government recognizes that ROVs belong to a category of four wheeled

motor vehicles designed primarily for offroad recreational use.

https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=201510&RIN=3041-AC78

38.     The U.S. Consumer Protection Safety Commission, an agency of the U.S.

Government, defines ROVs as "motorized vehicles having four or more low-pressure tires

designed for off-road use and intended by the manufacturer primarily for recreational use by one

or more persons. The salient characteristics of an ROV include a steering wheel for steering

control, foot controls for throttle and braking, bench or bucket seats, a roll-over protective

structure, and a maximum speed greater than 30 mph."

39.     CBP has a long history of classifying substantially identical ROVs in Heading

8703, HTSUS.

40.    For example, in Ruling HQ 967367 (Jan. 28, 2005) CBP considered the proper classification of the "Tomcar Ultimate Terrain Vehicle" (Tomcar). The Tomcar is a four-wheeled vehicle with a wide wheelbase and 12-inch ground clearance. The Tomcar has a tubular frame surrounding the passenger compartment, seating for two with safety belts, optional doors, a roll cage and "a rear cargo deck measuring 47.6 inches by 26 inches, with 440 lb. capacity." The Tomcar is marketed and advertised as "an offroad vehicle that offers the 'thrill and adventure of all-terrain driving' on rough terrain, by sportsmen, in patrol activities, in large outdoor areas 'no utility vehicle can access and for which all-terrain vehicles are impractical and sport utility vehicles are too expensive.'" Based upon the Tomcar's structural and auxiliary design features and intended uses, CBP determined that the Tomcar was classifiable under Heading 8703, HTSUS.

41.    In NY Ruling N276410 (Jun. 21, 2006) CBP considered the proper classification of a track system used in lieu of tires on certain all-terrain vehicles and UTVs. The track systems were designed to be used on UTVs such as the Can-Am Defender DPS HD10, Polaris Ranger XP 900 EPS, John Deere Gator XUV 825i EPS, and Honda Pioneer 1000 EPS. CBP determined that the track systems were classifiable under Heading 8708, HTSUS, which covers "Parts and accessories of the motor vehicles of heading 8701 to 8705: Road wheels and parts and accessories thereof: For other vehicles: Parts and accessories: Other" because CBP determined that the specified UTVs were classifiable as "motor vehicles of heading 8703, of the Harmonized Tariff Schedule of the United States (HTSUS)."

42.    While not described in Ruling N276410, *supra,* on information and belief, the Can-Am Defender DPS HD10, Polaris Ranger XP 900 EPS, John Deere Gator XUV 825i EPS, and Honda Pioneer 1000 EPS are all four-wheeled, two-passenger UTVs with open rear cargo areas making them substantially identical to the UTVs at issue.

43.     In NY Ruling N236160 (Jan. 3, 2013), CBP considered the proper classification of the John Deere Gator which is a two-passenger recreational utility vehicle with an open cargo area in the rear of the vehicle.  Notably, the ruling includes a picture of the Gator:



Based on its features, CBP determined that the Gator was classifiable under Heading 8703, HTSUS.

44.     In NY Ruling N320749 (Jul. 2021), CBP determined the proper classification of the "Mahindra Roxor Off-Road Vehicle" (Roxor).  As explained in the ruling, the Roxor is an "off-road side-by-side (SxS), also known as a utility task vehicle (UTV), or a recreational off-highway vehicle (ROV)."  As entered the Roxor has seating for two passengers and a "rear cargo space with a swing style tailgate . . . with a rear payload capacity of 349 lbs."  Based upon its features CBP determined that the Roxor was classifiable under Heading 8703, HTSUS.

45.     Rulings HQ 967367, NY N236160, N276410, and NY N320749 have not been revoked and were in effect more than 60 days prior to and at all times relevant to this matter.

46.     Despite the relevant court precedent, the physical characteristics, intended uses and marketing of the UTVs at issue, CBP's long standing rulings classifying substantially identical UTVs under 8703, HTSUS, on March 3, 2020, CBP issued NY Ruling N309547 to MTD opining

that the UTVs at issue were classifiable under Heading 8704, HTSUS, which covers "motor vehicles for the transport of goods."

47.　　Ruling N309547 was issued in response to a country of origin ruling request and not a classification ruling request.

48.　　Because MTD had sought a country-of-origin determination and not a classification ruling, MTD did not discuss all of the pertinent physical characteristics and intended uses of the UTVs in its ruling request which are critical to the proper classification of a vehicle.

49.　　CBP's uninformed and gratuitous statements concerning classification in response to a country-of-origin request constitutes dicta.

50.　　Ruling N309547 was issued without the statutorily required notice and comment period and thus, has no legal effect.

51.　　Despite being ineffective CBP reliquidated the subject entries in accordance with Ruling N309547.

**CAUSE OF ACTION**

**COUNT I- THE UTVS ARE CLASSIFIABLE UNDER HEADING 8703**

**a.　The UTVs are *Prima Facie* Classifiable Under Heading 8703**

52.　　Plaintiff hereby incorporates and alleges paragraphs 1 through 51 as if fully set forth herein.

53.　　Merchandise imported into the United States is classified under the HTSUS.　Tariff classification is governed by the principles set forth in the General Rules of Interpretation (GRI) and, in the absence of special language or a context that requires otherwise, by the Additional U.S. Rules of Interpretation.

54.　　"The GRIs are to be applied in numerical order, such that if the proper classification

is achieved through a particular GRI, the remaining successive GRIs should not be considered." *Starkist Co., v. United States*, 2022 WL 945663 (Fed. Cir. 2022).

55.     GRI 1 of the HTSUS states, in relevant part, that "classification shall be determined according to the terms of the headings and any relevant section or chapter notes" and requires that classification be determined first according to the terms of the HTSUS headings and any relative section or chapter notes.

56.     Heading 8703 provides for "[m]otor cars and other motor vehicles principally designed for the transport of persons (other than those of 8702), including station wagons and racing cars."

57.     The Court of Appeals for the Federal Circuit has held that Heading 8703, HTSUS, is an *eo nomine* provision which inherently suggests an intended use, *i.e*., transport of persons and as such "inherently requires looking into intended use" of vehicles. See *Ford Motor Company v. United States*, 926 F.3d 741 (Fed. Cir. 2019).

58.     The hallmark of classification under Heading 8703, HTSUS, is "that a vehicle's intended purpose of transporting persons must outweigh an intended purpose of transporting goods" and, "[t]o make this determination, . . . both the structural and auxiliary design features must be considered." *Ford Motor Company v. United States*, 926 F.3d 741, 750 (internal citations omitted).

                    i.       **The structural design features of the UTVs are principally designed for passenger transport**

59.     Each UTV at issue has structural features designed primarily for offroad recreational passenger transport.

60.     Each UTV at issue was designed and equipped with roll bars designed for driver and passenger safety.

61.     Each UTV at issue was designed and equipped with three-way adjustable suspensions systems to enhance traction and driver and passenger comfort on trails.

62.     Each UTV at issue was designed and equipped with steel skid plates along its bottom to prevent sticks or other debris from puncturing the floor of the passenger compartment and allow the vehicles to slide over rocks or other debris.

63.     Each UTV at issue was designed and equipped with partial or full doors for driver and passenger hip and shoulder retention while riding on rough terrain.

64.     Each UTV at issue was designed and equipped with either front or front and rear lockable differentials for increased traction in offroad conditions.

65.     Each UTV at issue was designed and equipped with front and rear sway bars to keep the vehicles from pitching and rolling while driving at speed over rough terrain.

66.     Each UTV at issue was designed and equipped with high quality paint, wiring, fuse boxes, seat fabric and seat stitching designed to withstand pressure washing after muddy trail rides.

67.     Each UTV at issue is equipped with low pressure 26" tires with offroad/trail tread patterns to help grip uneven terrain.

68.     Each UTV at issue was designed and equipped with on-demand four-wheel drive for enhanced offroad traction.

69.     Each UTV at issue was designed and equipped with front suspension with 9" of travel and rear suspension with 8" of travel on to maintain ground contact while traveling at speed over uneven ground.

70.     Each UTV at issue was designed and equipped with multi-ply tires to prevent punctures on rough terrain.

71.     Each UTV at issue was designed and equipped with a wide 76.8" wheelbase for stability on uneven terrain and slopes.

15

72.     Each UTV at issue was designed and equipped with a ground clearance of between 11.6" and 13" to traverse debris-strewn trails.

73.     Each UTV at issue was designed and equipped with specially positioned engine air intakes to prevent drawing dust and dirt into the vehicles while operating on muddy and/or dusty terrain and to enhance the vehicles' water crossing capabilities.

        **ii.    The auxiliary design features of the UTVs are principally designed for passenger transport**

74.     Each UTV at issue has a variety of auxiliary features designed for passenger safety, comfort, and convenience.

75.     Each UTV at issue was designed and equipped with enhanced foam seating specifically designed to provide a comfortable ride and lumbar support for the driver and passenger.

76.     Each UTV at issue was designed and equipped with specially located and designed permanent safety belts for the driver and passenger.

77.      Each UTV at issue was designed and equipped with sensors which limit vehicle speed to 15 MPH if the driver's safety belt is not buckled.

78.     Each UTV at issue was designed and equipped with a cupholder for the driver and passenger's convenience.

79.     Each Challenger Series UTV at issue was designed and equipped with a glove box and front storage to store personal effects.

80.     Each Challenger Series UTV at issue was designed and equipped with a 12-volt power outlet for charging passenger electronics such as smart phones.

81.     Each UTV at issue was designed and manufactured to fully comply with all of the ROHVA voluntary safety standards applicable to high speed recreational ROVs.

82.     Each UTV at issue was designed to accept a variety of passenger oriented optional features including, sounds bars, heaters, full doors, windshields, and grab bars.

83.     Each UTV at issue was designed and equipped with noise dampening ducts and enhanced engine isolation for a quitter and more comfortable ride for the driver and passenger.

### iii.     The UTVs are primarily marketed for passenger transport

84.     Based upon their design features, MTD markets the UTVs primarily for offroad recreational use and to transport passengers during outdoor activities such as camping, hiking, and hunting, and secondarily, for light outdoor work.

85.     As a result of their structural and auxiliary design features and intended uses, the UTVs at issue are classifiable under Heading 8703, HTSUS, and MTD is entitled to a refund of all unlawful duties assessed and paid, together with all applicable interest.

### COUNT II- VIOLATION OF SECTION 1625

86.     Plaintiff hereby incorporates and alleges paragraphs 1 through 51 as if fully set forth herein.

87.     Section 1625 of Title 19 of the United States Code sets forth certain measures Customs must take with respect to its proposed interpretive rulings.  Specifically, Customs must publish in the *Customs Bulletin and Decisions* (Customs Bulletin) or make available for public inspection "any interpretive ruling (including any ruling letter, or internal advice memorandum). . . ." 19 U.S.C. § 1625(a).

88.     Further, Section 1625(c)(1) of Title 19 of the United States Code directs Customs to publish in the Customs Bulletin any decision that modifies or revokes interpretive rulings or decisions that have been in effect for at least 60 days

89.     Section 1625(c)(1) provides, in pertinent part:

(c) **Modification and revocation**
A proposed interpretive ruling or decision which would—

(1) Modify (other than correct a clerical error) or revoke a prior
    interpretive ruling or decision which has been in effect for at
    least 60 days;

***

shall be published in the Customs Bulletin. The Secretary shall give
interested parties an opportunity to submit, during not less than the
30-day period after the date of such publication, comments on the
correctness of the proposed ruling or decision.  After consideration
of any comments received, the secretary shall publish a final ruling
or decision in the Customs Bulletin within 30 days after the closing
of the comment period.  The final ruling or decision shall become
effective 60 days after the date of its publication.

90.     CBP's UTV ruling letters including HQ 967367, NY N236160, N276410, and NY N320749 were all in effect for more than 60 days prior to the entries at issue and have never been revoked.

91.     Ruling N309547 is a decision within the meaning of Section 1625, and it had the effect of revoking or modifying CBPs longstanding UTV rulings.  Thus, CBP's failure to publish notice of N309547 in the Customs Bulletin and seek public comment on same, was in violation of Section 1625 and thus N309547 is ineffective.

92.     Additionally, CBP's liquidation or reliquidation of the subject entries under Heading 8704, HTSUS, were decisions within the meaning of Section 1625 which had the effect of revoking or modifying CBP's longstanding UTV rulings.  Thus, CBP's failure to publish notice of the decisions embodied in these liquidations in the Customs Bulletin and seek public comment on same, was in violation of Section 1625 and the liquidations were contrary to law.

93.     Accordingly, MTD is entitled to a refund of all unlawful duties assessed and paid, together with all applicable interest.

## REQUEST FOR JUDGMENT AND RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment overruling the denial of Plaintiff's protest and ordering Customs to reliquidate the subject entries at the rate, value and amount of duty asserted by the importer of record in its protests with a refund of duties, plus interest as appropriate.  Plaintiff also requests such other and further relief as the Court deems appropriate and just.

Respectfully submitted,

**SANDLER, TRAVIS & ROSENBERG, P.A.**
*Attorneys for Plaintiff*
675 Third Avenue, Suite 1805-06
New York, New York 10017
Telephone: (212) 549-0137

By: ____/s/ Jason M. Kenner____
JASON M. KENNER
MARILYN-JOY CERNY
ROBERT LYONS GRASING

Dated: August 5, 2022
New York, New York